## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ALFREDO CAPOTE, | : | MOTION TO VACATE |
| BOP ID 18112-035, | : | 28 U.S.C. § 2255 |
|   Movant, | : | |
| | : | CIVIL ACTION NO. |
|   v. | : | 1:19-CV-1045-MHC-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|   Respondent. | : | 1:15-CR-338-4-MHC-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter was referred to me for screening of Alfredo Capote's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. *See* [267].

The Rules Governing Section 2255 Proceedings for the United States District Courts provide that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [court] *must* dismiss the motion and direct the clerk to notify the moving party." 28 U.S.C. foll. § 2255, Rule 4 (emphasis added). For the reasons set forth below, I find and conclude that it plainly appears that Capote is not entitled to relief.

Therefore, I **RECOMMEND** that Capote's § 2255 motion be **DISMISSED** and that a Certificate of Appealability **NOT BE ISSUED**.

On September 8, 2015, Capote was one of six defendants charged in a 35-count indictment with wire fraud conspiracy and related crimes involving the resale of cellular devices stolen or fraudulently obtained from T-Mobile USA, Inc., Sprint Corporation, Verizon Communications, Inc., AT&T, Inc., and Apple Inc.  *See* [1].

Capote was arrested in October 2015.  *See* [43].

The government filed a Motion for Detention, contending that "there [was] a serious risk that Capote [would] flee" and that "there [were] no conditions of release that [would] reasonably assure his appearance as required and protect the community."  [53] at 1.

This Court denied the government's motion and entered an Order releasing Capote, subject to conditions, *see* [55]; *see also* [54] (bond), which were later amended, *see* [65] & [69].

In April 2016, Capote moved to have those conditions relaxed so he could travel outside the Northern District of Georgia, *see* [81], which this Court granted in part and denied in part, *see* [85].

Capote promptly absconded.  *See* [93] & [94].

Meanwhile, in February 2017, one of Capote's co-conspirators, Tony Archie, went to trial and was convicted on all charges against him. *See* [160]

Capote was located and re-arrested soon afterward in May 2017. *See* [185].

Aware that Archie had been convicted on all charges after a multi-day trial, Capote pled guilty in September 2017 to one count of conspiracy to commit wire fraud. *See* [221].

As particularly relevant here, Capote's plea agreement stated that (A) the "Government recommends and the Defendant agrees that: . . . [t]he loss amount for the offense of conviction and all relevant conduct is more than $550,000, but less than $3,500,000," and (B) the "Government agrees to recommend and the Defendant agrees that the Defendant receive a two level increase in offense level for obstructing and impeding the administration of justice under Section 3C1.1." [221-1] at 5. The plea agreement included not only a signature page, but also an affirmation page on which Capote explicitly confirmed that he "read the foregoing Plea Agreement and . . . carefully reviewed every part of it." *Id.* at 14.

3

At his Rule 11 hearing, the government reiterated, *inter alia*, that Capote had admitted in his written plea agreement "that the loss amount is greater than $550,000, but less than $3.5 million."  [232] at 10.  And the Rule 11 hearing included the following colloquy:

> Q.  Mr. Capote, the [A]ssistant United States [A]ttorney has disclosed a plea agreement that you and all counsel have entered into, and the terms of such agreement.  Do you agree with the description of the plea agreement?
>
> A.  Yes.
>
> Q.  Do you understand the plea agreement?
>
> A.  Yes, I do.

*Id.* at 13-14.

> And later:
>
> Q.  Mr. Capote, do you feel you've had sufficient time to think about and discuss this matter fully with your attorney prior to your entry of your guilty plea today?
>
> A.  Yes.
>
> Q.  Are you satisfied with the representation of your lawyer in this case?
>
> A.  Yes.

*Id.* at 15-16.

When the government described the factual basis for Capote's guilty plea to one count of conspiracy to commit wire fraud, he readily agreed that he was "guilty of wire fraud conspiracy." [232] at 23. And although Capote quibbled about (A) whether he had involved his company in criminal activity or just himself, personally, and (B) whether he had used stolen identities, *id.* at 24-28, he did not dispute any term of his plea agreement, including his admission (highlighted earlier during the Rule 11 hearing) that the loss amount was between $550,000 to $3,500,000. The Court concluded that, "[g]iven the colloquy, I think there is a factual basis for the plea of guilty in this case, and I find that there is a factual basis for his plea to Count 1 of the indictment in this case." *Id.* at 28.

At sentencing, Capote withdrew his objection to the restitution amount set forth in the Presentence Investigation Report, and the government withdrew its objection to the loss amount set forth in the Presentence Investigation Report. *See* [251] at 3. The parties agreed that Capote owed restitution in the amount of $741,503.20 and that the loss amount attributable to Capote for sentencing should be $1,493,477.90. *See id.* at 19, 21. Capote's sentence also included a two-level increase for obstruction of justice (related to his flight before trial), which, the Court

5

noted, was agreed to by the parties in the plea agreement.  *See id.* at 14-16.

When the Court walked step-by-step through its final sentencing guidelines

calculation, both parties indicated they had no further objections.  *See* [251]

at 22.  And when Capote exercised his right of allocution, he took no issue

with the agreed figures for restitution and loss amount or the obstruction of

justice enhancement.  *See id.* at 40-41.

This Court ultimately sentenced Capote to a 62-month term of

imprisonment, a 3-year term of supervised release, and restitution in the

amount of $741,503.20.  *See* [235].

Capote's only claim on direct appeal was that his sentence was

substantively unreasonable.  *See* Appellant's Brief filed Apr. 17, 2018, in

*United States v. Capote*, No. 18-10370 (11th Cir. 2018) (available on

www.pacer.gov).  The United States Court of Appeals for the Eleventh

Circuit did not reach that issue because it dismissed Capote's appeal based

on the appeal waiver in his plea agreement.  *See* [260].

While his appeal was pending, Capote moved for reconsideration of

his sentence, *see* [259], which this Court denied, *see* [262].

Capote then filed the § 2255 motion now before me.  *See* [267].

Capote states one ground for relief–that he received ineffective assistance of counsel–and his entire statement in support is as follows.

> Paragraph 143 of the Presentence Investigation Report states "the offense level is increased by 14 points because the loss amount was greater than $550,000, but less than $1,500,000. The loss amount in this case was $1,493,477.90." This loss amount is derived from paragraph 138 of the Presentence Investigation Report which states: "Between 10/1/10 and 12/31/12, Capote received $877,852 in compensation from Ace Wholesale. Between 3/16/13 and 12/17/13 Capote sold 1,482 electronic devices to Westside Wireless and received $694,230 in compensation. Therefore, the total loss amount from both companies is $1,572,082. Testimony at Tony Archie's trial indicated that analysis of the cellular telephones sold by Capote revealed that 95% of the cellular telephones that he sold to Ace Wholesale were fraudulent. Therefore, $1,572,082 x .95 = $1,493,477.90. A conservative loss amount attributed to Capote is $1,493,477.90." The true and accurate loss to Capote's victim in this case, Asurion, is the loss of 105 cellular phones or tablets valued at $57,910. *See* Paragraph 41 of the Presentence Investigation Report. Counsel for Capote did not object to the grossly inflated loss amount derived from money paid to Capote rather than the loss actually suffered from Capote's actions. This failure, along with the failure to provide discovery to Capote to give him a chance to assist with an objection to the loss calculation, constituted ineffective assistance of counsel.
>
> Additionally, counsel failed to comply with a direct request from Defendant to object to obstruction of justice 2-level increase.

[267] at 4.

This is not a difficult motion to resolve, because it is plainly meritless.

"Plea bargains . . . are like contracts and should be interpreted in accord with what the parties intended." *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005). And, when so interpreted, this includes enforcing the terms of a plea agreement waiving the right to challenge "difficult or debatable issues" and even "blatant error." *Id.* at 1331 (quoting *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)).[1]

Capote's plea agreement included explicit and unambiguous terms in which he agreed that his sentence should (A) reflect a loss amount of "more than $550,000, but less than $3,500,000," and (B) include a "two level increase in offense level for obstructing and impeding the administration of justice under Section 3C1.1." [221-1] at 5.

---

[1] As one Eleventh Circuit panel observed:

> In negotiating a plea bargain, both sides aim for the best terms they can get, placing bets on what the future will hold. The problem is that the future and certainty are strangers, and not everyone wins a wager. Sometimes, a deal, like a tattoo, does not age well and what appeared to be attractive in the past seems unattractive in the future. But plea agreements, like most tattoos, are written in permanent ink and cannot be redrawn just because one party suffers from the plea bargain form of buyer's remorse.

*United States v. Melton*, 861 F.3d 1320, 1321 (11th Cir. 2017). Consequently, a court cannot "take up the judicial pen and redraw [prisoners'] freely entered plea agreements whose ink [is] dry." *Id.*

8

Nothing that Capote has written in his § 2255 motion suggests that his entry into the plea agreement was not knowing and voluntary. Indeed, when the Court sentenced Capote, it specifically said: "Mr. Capote, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary." [251] at 50. But Capote did not make that argument on direct appeal, and he has not made it here in his motion.

Furthermore, "when a defendant makes statements under oath during a plea colloquy, he bears a heavy burden to show that his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Otherwise, "[t]here is a strong presumption that the statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

At his Rule 11 hearing, Capote stated that the plea agreement accurately reflected his entire bargain with the government, including with respect to loss amount and the obstruction of justice enhancement. And Capote further stated that the factual basis proffered for his plea was accurate, including with respect to loss amount and obstruction of justice.[2]

---

[2] Capote's contention that he was denied "discovery" with respect to the loss amount is meritless (A) because he has not identified any exculpatory, but withheld, information that was subject to discovery under Federal Rule of

Because the loss amount and obstruction of justice sentencing terms were agreed to by Capote knowingly and voluntarily, both terms were enforceable, even if they limited Capote's opportunity prospectively to challenge them as "difficult or debatable issues" or "blatant error." Therefore, objections to either term at sentencing would have been meritless. Consequently, Capote's attorney did not render ineffective assistance by foregoing meritless objections with respect to the loss amount or the obstruction of justice enhancement, even if Capote directed him to make those objections. *See, e.g.*, *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"). *See also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a movant to show that his attorney's performance was deficient and that the deficient performance prejudiced his defense).

---

Criminal Procedure 16 or mandatory disclosure under relevant caselaw, and (B) because, as one of the conspirators, he had direct, personal knowledge with respect to the scope of his fraud and would have known if it was limited to the $57,910, that he claims now.

It bears repeating that (A) in his plea agreement, (B) again at his Rule 11 hearing, and (C) then again at sentencing (when both parties signed off on a final loss amount of $1,493,477.90), Capote *never* disputed his admission that the loss amount for which he was responsible fell in a range from $550,000 to $3,500,000, even as that range was repeatedly highlighted.

Thus, it plainly appears from the motion and the record of prior proceedings that Capote is not entitled relief, and I have recommended dismissal pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

I have further recommended that a Certificate of Appealability not issue because Capote does not meet the requisite standards. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

I note that Capote has not requested an evidentiary hearing, and I find and conclude in any event that none is required because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("'To allow indiscriminate hearings in federal post-conviction proceedings . . . for

federal prisoners under 28 U.S.C. § 2255 . . . would eliminate the chief virtues of the plea system—speed, economy, and finality,'" and where the record includes a transcript of the plea colloquy, a § 2255 movant will be entitled to an evidentiary hearing "'only in the most extraordinary circumstances.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 71, 80 n.19 (1962)).

I **DIRECT** the Clerk to terminate the referral of this case to me.

**SO RECOMMENDED AND DIRECTED**, this 25th day of March, 2019.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE